**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LORI CHAVEZ-DEREMER,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>        Plaintiff,<br><br>    v.<br><br>AMAZING CARE HOME HEALTHCARE<br>SERVICES, LLC, CHRISTOPHER KEAR, and<br>JOSEPHINE KILIPKO,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 2:24-cv-00190-TJS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**SECRETARY OF LABOR'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 1

  A.   Introduction ............................................................................................. 1

  B.   Summary Judgment Standard ................................................................. 3

  C.   Amazing Care Home Healthcare Services, LLC Is A Covered Enterprise ............. 4

  D.   Defendants Christopher Kear And Josephine Kilipko Are Employers Under

       Section 3(d) Of The FLSA And Are Individually Liable For The Overtime And

       Recordkeeping Violations At Amazing Care ......................................... 6

       i.    Defendant Christopher Kear is an "employer" under Section 3(d) of the FLSA .......... 7

       ii.   Defendant Josephine Kilipko is an "employer" under Section 3(d) of the FLSA .......... 8

  E.   Defendants' Workers Who Were Home Health Aides And Licensed Practical

       Nurses Were Employees Under The FLSA ......................................... 8

       i.    Defendants control the manner in which work is performed ......................................... 9

       ii.   Neither HHAs nor LPNs have the opportunity for profit or loss depending upon

             managerial skill ............................................................................................ 10

       iii.  HHAs do not invest in equipment or materials required for their tasks .................. 10

       iv.   HHAs do not qualify as "skilled" and LPNs did not exercise their skills in an

             independent way ............................................................................................ 10

       v.    Both HHAs and LPNs have a high degree of permanence in their relationship with

             Defendants ........................................................................................................ 11

vi.     The services provided by HHAs and LPNs are an integral part of Defendants' business ............................................................................................................. 11

**F.    Defendants Violated The FLSA's Overtime Requirements** ...................................... 12

**G.    Defendants Violated The FLSA's Recordkeeping Requirements** .......................... 13

**H.    Defendants' Violations Of The Section 7 Overtime Requirements Were Willful** .. 14

**I.    Defendants Are Liable For Liquidated Damages In An Amount Equal To Their Liability For Back Wages** ............................................................................................ 16

**J.    The Amount Of Backwages Owed From July 13, 2020 Through December 27, 2024 Is $5,919,096.34** ............................................................................................................ 17

**K.    Defendants' Violations Of The FLSA Warrant Injunctive Relief** .......................... 18

**III.    CONCLUSION** ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Adler v. Walmart Stores, Inc.*,
  144 F.3d 664 (10th Cir. 1998) ................................................................ 3
*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242 (1986) ............................................................................... 3
*Anderson v. Mt. Clemens Pottery*,
  382 U.S. 680 (1946) ............................................................................... 18
*Armbruster v. Unisys Corp.*,
  32 F.3d 768 (3d Cir.1994) ..................................................................... 3
*Brennan v. Western Union Tel. Co.*,
  561 F.2d 477 (3d Cir. 1977) .................................................................. 2
*Brock v. Claridge Hotel and Casino*,
  846 F.2d 180 (3d Cir. 1988) .................................................................. 12, 16
*Brock v. Hamad*,
  No. 86-757-CIV-5, 1987 WL 46573 (E.D.N.C. Nov. 25, 1987) ........... 19
*Brock v. Superior Care, Inc.*,
  840 F.2d 1054 (2d Cir. 1988) ................................................................ 9, 10
*Brock v. Wilamowsky*,
  833 F.2d 11 (2d Cir. 1987) .................................................................... 17
*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) ............................................................................... 1
*Brooks v. Village of Ridgefield Park*,
  185 F.3d 130 (3d Cir. 1999) .................................................................. 16
*Burroughs v. MGC Servs., Inc.*,
  No. 08-1671, 2009 WL 959961 (W.D. Pa. Apr. 7, 2009) ..................... 7
*Castellino v. M.I. Friday, Inc.*,
  No. 11-261, 2012 WL 2513500 (W.D. Pa. June 29, 2012) ................... 7
*Celotex Corp. v. Cattrett*,
  477 U.S. 317 (1986) ............................................................................... 3
*Diaz v. Jaguar Rest. Grp., LLC*,
  649 F. Supp. 2d 1343 (S.D. Fla. 2009) ................................................. 5
*Disney v. Entenmann's, Inc.*,
  No. Civ. H-99-2247, 2000 WL 1721793 (D.Md. Nov. 17, 2000) ........ 3
*Dole v. Bishop*,
  740 F. Supp 1221 (S.D. Miss. 1990) ..................................................... 5
*Dole v. Haulaway, Inc.*,
  723 F. Supp. 274 (D.N.J. 1989) ............................................................ 7, 18
*Dole v. Solid Waste Servs., Inc.*,
  733 F. Supp. 895 (E.D. Pa. 1989) ......................................................... 7, 13

*Donovan v. DialAmerica Marketing, Inc.*,
   757 F.2d 1376 (3d Cir. 1985).................................................................. 8, 9, 11, 12
*Donovan v. Rockwell Tire & Fuel, Inc.*,
   No. C-79—498, 1982 WL 2120 (M.D.N.C. Mar. 30, 1982) ........................ 18
*Donovan v. S&L Dev. Co.*,
   647 F.2d 14 (9th Cir. 1981) ........................................................................... 4
*Drexel v. Union Prescription Ctrs.*,
   582 F.2d 781 (3d Cir. 1978)............................................................................ 9
*Elwell v. Univ. Hosps. Home Care Servs.*,
   276 F.3d 832 (6th Cir. 2002) ....................................................................... 15
*Garcia v. Tenafly Gourmet Farms, Inc.*,
   No. 11-6828, 2012 WL 715316 (D.N.J. 2012) ............................................ 14
*Haybarger v. Lawrence Cnty. Adult Prob. and Parole*,
   667 F.3d 408 (3d Cir. 2012)............................................................................ 6
*In re Enter. Rent-A-Car Wage & Hour Practices Litig.*,
   683 F.3d 462 (3d Cir. 2012).......................................................................... 6, 8
*Chao v. A-One MedicalServs., Inc.*,
   346 F.3d 908 (9th Cir. 2003) ......................................................................... 3
*Jackson v. Art of Life, Inc.*,
   836 F. Supp. 2d 226 (E.D. Pa. 2011) .......................................................... 7, 8
*Jimenez v. Best Behavioral Healthcare, Inc.*,
   391 F.Supp.3d 380 (E.D. Pa. 2019) ........................................................ 10, 11
*Katz v. DNC Servs. Corp.*,
   2019 WL 4752056 (E.D. Pa. Sept. 27, 2019) ............................................... 5
*Layden v. HSL Builders, Inc.*,
   2002 WL 1397455 (E.D. Pa. June 26, 2002) ................................................ 5
*Lenroot v. Kemp*,
   153 F.2d 153 (5th Cir. 1946) ........................................................................ 19
*Marshall v. Brunner*,
   668 F.2d 748 (3d. Cir. 1982).................................................................... 5, 16
*Marshall v. Chala Enter., Inc.*,
   645 F.2d 799 (9th Cir. 1981) ........................................................................ 19
*Marshall v. Van Matre*,
   634 F.2d 1115 (8th Cir. 1980) ...................................................................... 19
*Martin v. Cooper Elec. Supply Co.*,
   940 F.2d 896 (3d Cir. 1991)......................................................................... 16
*Martin v. Funtime*,
   963 F.2d 110 (6th Cir. 1992) ........................................................................ 19
*Martin v. Selker Bros., Inc.*,
   949 F.2d 1286 (3d Cir. 1991)........................................................................ 14
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)......................................................................................... 3
*McClanahan v. Mathews*,
   440 F.2d 320 (6th Cir. 1971) ........................................................................ 16
*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988)....................................................................................... 14

*Mitchell v. Hausman*,
    261 F.2d 778 (5th Cir. 1958) ............................................................ 19

*Monroe v. Beard*,
    536 F.3d 198 (3d Cir. 2008).............................................................. 3

*Mumby v. Pure Energy Services (USA), Inc.*,
    636 F.3d 1266 (10th Cir. 2011) ........................................................ 14

*Nairne v. Manzo*,
    1986 WL 12934 (E.D. Pa. Nov. 14, 1986) ........................................ 5

*Overnight Motor Transp. Co. v. Missel*,
    316 U.S. 572 (1942)........................................................................... 2

*Pendleton v. JEVS Hum. Servs., Inc.*,
    463 F. Supp. 3d 548 (E.D. Pa. 2020) ................................................ 9

*Razak v. Uber Techs., Inc.*,
    951 F.3d 137 (3d Cir. 2020)............................................................... 9

*Reich v. Brenaman Electrical Service*,
    Civ. No. 95-3737, 1997 WL 164235 (E.D. Pa. Mar. 28, 1997)........ 16

*Reich v. Cole Enter., Inc.*,
    901 F. Supp. 255 (S.D. Ohio 1993) .................................................. 19

*Reich v. Montfort, Inc.*,
    144 F.3d 1329 (10th Cir. 1998) ........................................................ 14

*Reich v. Petroleum Sales*,
    30 F.3d 654 (6th Cir. 1994) .............................................................. 19

*Rocha v. Bakhter Afghan Halal Kababs, Inc.*,
    44 F.Supp.3d 337 (E.D.N.Y 2014) ................................................... 5

*Safeco Ins. Co. of America v. Burr*,
    551 U.S. 47 (2007)............................................................................. 14

*Schamann v. O'Keefe*,
    314 F. Supp.2d 515 (D. Md. 2004).................................................... 4

*Sec'y U.S. Dep't of Labor v. Nursing Home Care Mgmt, Inc.*,
    No. 23-2284, 2025 WL 351599 (3d Cir. 2025) ................................ 15

*Stone v. Troy Construction, LLC*,
    935 F.3d 141 (3d Cir. 2019).............................................................. 14

*U.S. v. Rosenwasser*,
    323 U.S. 360 (1945)........................................................................... 6

*Walker v. Washbasket Wash & Dry*,
    2001 WL 770804 (E.D. Pa. 2001) .................................................... 5

*Walton v. United Consumers Club, Inc.*,
    786 F.2d 303 (7th Cir 1986) ............................................................. 17

*Williams v. Tri-County Growers, Inc.*,
    747 F.2d 121 (3d Cir. 1984)....................................................... 13, 16, 17

*Wirtz v. Modern Trashmoval, Inc.*,
    323 F.2d 451 (4th Cir. 1963) ............................................................ 4

Yang Li v. Ya Yi Cheng,
    2012 WL 1004852 (E.D.N.Y. March 23, 2012) ............................... 5

Statutes

29 U.S.C. § 201 ........................................................................................................... 1
29 U.S.C. § 202 ........................................................................................................... 1
29 U.S.C. § 203(d) ................................................................................................... 2, 7
29 U.S.C. § 203(s)(1) .................................................................................................. 4
29 U.S.C. § 203(s)(1)(A) ............................................................................................. 4
29 U.S.C. § 203(s)(1)(A)(i-ii) ...................................................................................... 5
29 U.S.C. § 207(a) ............................................................................................... 2, 4, 5
29 U.S.C. § 207(a)(1) ................................................................................................. 12
29 U.S.C. § 211(c) ................................................................................................. 2, 13
29 U.S.C. § 216(b) ...................................................................................................... 2
29 U.S.C. § 216(c) ..................................................................................................... 16
29 U.S.C. § 217 ......................................................................................................... 18
29 U.S.C. § 255(a) ..................................................................................................... 14
29 U.S.C. §§ 202(a), 203(b), 203(r) and 203(s)(1)(A) ............................................ 2, 4

Rules

Fed. R. Civ. P. 56(c) ................................................................................................... 3
Fed. R. Civ. P. 56(e) ................................................................................................... 3

Regulations

29 C.F.R. § 516.6 ...................................................................................................... 13
29 C.F.R. § 776.10 ...................................................................................................... 5
29 C.F.R. § 776.9 ........................................................................................................ 4
29 C.F.R. § 778.109 .................................................................................................. 17
29 C.F.R. § 778.110(a) .............................................................................................. 18
29 C.F.R. § 779.103 .................................................................................................... 5
29 C.F.R. § 516.2(a) .................................................................................................. 13
29 C.F.R. §§ 516.2(a)(7)-(8) ..................................................................................... 14
29 C.F.R. §§ 516.2, 516.5(a) ..................................................................................... 13

## I.    INTRODUCTION

Plaintiff, Lori Chavez-DeRemer, Secretary of Labor (the "Secretary"), moves for summary judgment in favor of the Secretary against Defendants Amazing Care Home Healthcare Services, LLC ("Amazing Care"), Christopher Kear, and Josephine Kilipko ("Defendants"). Defendants failed to pay the applicable overtime premium to many of their employees when they worked more than forty hours in a workweek. Defendants misclassified some of those workers as independent contractors. Defendants have admitted that the classification was based not on any change in material circumstance or job duties, but upon the fact that Defendants did not wish to pay the overtime premium. The Secretary requests that the Court grant summary judgment as detailed in the proposed order accompanying this memorandum of law to remedy Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (hereinafter "the Act" or "the FLSA").

Through this conduct, Defendants willfully violated Sections 7 and 15(a)(2) of the Act by failing to pay non-exempt employees the applicable overtime premiums when employees worked more than forty hours in a workweek. Defendants also violated Section 11(c) of the Act by failing to record overtime wages and failing to record hours worked on a daily or weekly basis.

## II.    ARGUMENT

### A.    Introduction

The FLSA was enacted to abolish substandard labor conditions, including protecting workers from substandard wages and oppressive hours. 29 U.S.C. § 202; *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945). Notably, by requiring "extra pay for overtime work by those covered by the [FLSA] even though their hourly wages exceeded the statutory minimum," the Act's overtime pay requirement applied "financial pressure … to spread employment … and

workers were assured additional pay to compensate them" for the long hours. *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 577-78 (1942); *Brennan v. Western Union Tel. Co.*, 561 F.2d 477, 482 (3d Cir. 1977).

The material issues of fact in this case are not genuinely in dispute. The attached pleadings, deposition transcripts, documentary evidence, and discovery responses demonstrate that, as a matter of law: 1) Defendant Amazing Care Home Healthcare Services, LLC, a limited liability company is a covered enterprise engaged in commerce or in the production of goods for commerce under 29 U.S.C. §§ 202(a), 203(b), 203(r) and 203(s)(1)(A) of the FLSA; 2) Defendant Christopher Kear is individually liable as an "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d); 3) Defendant Josephine Kilipko is individually liable as an "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d); 4) Defendants' home health aides ("HHAs") and licensed practical nurses ("LPNs") were employees of Defendants under the meaning of the FLSA; 5) Defendants are liable for violations of the overtime provisions of the FLSA, 29 U.S.C. § 207(a), by failing to pay their employees one and one-half times their regular rates for hours worked in excess of forty hours per workweek; 6) Defendants are liable for violations of the Section 11(c) recordkeeping provisions of the FLSA, 29 U.S.C. § 211(c), for failing to make, keep, and preserve records of their employees' wages, hours, and other conditions and practices of employment; 7) Defendants' Section 7 overtime violations were willful; 8) Defendants are liable under Section 16(c) of the FLSA, 29 U.S.C. § 216(b), for liquidated damages in an amount equal to their liability for back wages as a result of their FLSA violations; 9) for the time period from July 13, 2020 through December 27, 2024, Defendants owe $5,919,096.34 in back wages; and 10) Defendants' violations warrant injunctive relief. Plaintiff is entitled to summary judgment on these issues.

B.    **Summary Judgment Standard**

Summary judgment is warranted if the Court is satisfied that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, summary judgment will be granted unless a reasonable factfinder could return a verdict for the nonmoving party on the evidence presented. *See Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)).  Summary judgment is often granted to plaintiffs in FLSA cases when the evidence shows no genuine issue of material fact.  *See, e.g.*, *Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003), *cert. denied* 541 U.S. 1030 (2004).

A party opposing a properly supported motion for summary judgment must establish that a genuine issue of material fact is to be resolved.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  The adverse party may not rest on mere denials of the pleading of the moving party, but must respond by affidavits or by other evidentiary materials as provided in Fed. R. Civ. P. 56(e) setting forth "specific facts showing that there is a genuine issue for trial." *Disney v. Entenmann's, Inc.*, No. Civ. H-99-2247, 2000 WL 1721793, at *4 (D.Md. Nov. 17, 2000). The non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Walmart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*  If the evidence presented by the nonmoving party is merely colorable, or is not

significantly probative, summary judgment must be granted. *Schamann v. O'Keefe*, 314 F. Supp.2d 515, 522 (D. Md. 2004) (citation omitted).  Plaintiff has met his burden of production and is entitled to judgment as a matter of law on each of the issues addressed below.

##### C.    Amazing Care Home Healthcare Services, LLC Is A Covered Enterprise

There is no genuine issue of material fact that Amazing Care Home Health Services, LLC is a covered enterprise under the FLSA.  To be subject to the FLSA's overtime provision, an employer must be an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1); *see also* § 207(a).  The FLSA's coverage provisions are construed broadly.  *Donovan v. S&L Dev. Co.*, 647 F.2d 14, 17 n.5 (9th Cir. 1981).  FLSA coverage based on the activities of employees are "governed by practical considerations rather than technical conceptions." *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451, 456 (4th Cir. 1963); *see also* 29 C.F.R. § 776.9.  Congress found, as part of the passage of the FLSA, "that the employment of persons in domestic service in households affects commerce."  29 U.S.C. § 202(a).

A covered enterprise is one that "has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 U.S.C. § 203(s)(1)(A).

There is no genuine issue of material fact that Defendants employed employees engaged in commerce.  Defendants' employees provided domestic service in the households of Defendants' patients.  As such, Congress has found that they affected commerce.  29 U.S.C. § 202(a).  Because these employees are engaged in commerce, every employee at issue in this

matter is a covered employee under 29 U.S.C. § 207(a), subject to the overtime requirements of the FLSA.[2]

It is also undisputed that Amazing Care is a covered enterprise under the FLSA. Business must generate at least $500,000 in gross annual sales to be covered enterprises under the FLSA.  29 U.S.C. § 203(s)(1)(A)(i-ii).  Defendants admit that Amazing Care generated annual gross volume of sales or business done in amounts that exceeded $500,000 each year

---

[2]       Employees of an enterprise who handle goods or materials that have been moved or produced in interstate commerce are subject to the FLSA.  *Marshall v. Brunner*, 668 F.2d 748, 751-52 (3d. Cir. 1982) (trash-collecting business was a covered enterprise because employees used materials and equipment that had moved in interstate commerce); *Walker v. Washbasket Wash & Dry*, 2001 WL 770804, *7-8 (E.D. Pa. 2001) (laundry business used washing machines and dryers that had moved in interstate commerce); *Nairne v. Manzo*, 1986 WL 12934, at *1-2 (E.D. Pa. Nov. 14, 1986) (ophthalmologic technician regularly purchased and used interstate supplies to serve customers); *Layden v. HSL Builders, Inc.*, 2002 WL 1397455, at *3 (E.D. Pa. June 26, 2002) (construction company employees purchased and used goods and supplies moved in interstate commerce); *Dole v. Bishop*, 740 F. Supp 1221, 1225 (S.D. Miss. 1990) (seafood restaurants were covered enterprises because employees, including cooks, regularly handled food items that had been moved in interstate commerce); *Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1347-48 (S.D. Fla. 2009) (restaurant was a covered enterprise because it prepared and relied on food products and beverages from outside the state and outside the country); *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F.Supp.3d 337, 346-47 (E.D.N.Y 2014) (employees handled and prepared out-of-state supplies and food products); Yang Li v. Ya Yi Cheng, 2012 WL 1004852, at *5-6 (E.D.N.Y. March 23, 2012) (restaurant purchased of out-of-state ingredients).  "[W]orkers who regularly use the mails, telephone or telegraph for interstate communication" are included in the class of employees engaged in interstate commerce.  29 C.F.R. § 779.103.  Use of the instrumentalities of interstate communication brings an employee within the coverage of the FLSA where such use is a "regular and recurrent" part of the employee's duties.  29 C.F.R. § 776.10; *see also Katz v. DNC Servs. Corp.*, 2019 WL 4752056, at *7 (E.D. Pa. Sept. 27, 2019).

As such, even if it were not the case that Congress had expressly recognized the employees at issue here as engaged in commerce, Defendants' employees regularly used telephones to call into Defendants' automated timekeeping system, or to log their start and end times via mobile app, also using mobile telephones.  (Plaintiff's Statement of Undisputed Facts (hereinafter, "SOF") at ¶¶ 2, 52.  This timekeeping system is based in the state of New York. (SOF at ¶ 2).  As such, Defendants' employees are also covered employees on that basis.

from 2018 through 2024.  (SOF at ¶ 3).  Therefore, Defendant Amazing Care Home Healthcare

Services, LLC is a covered enterprise subject to the overtime requirements of the FLSA.

**D.    Defendants Christopher Kear And Josephine Kilipko Are Employers Under Section 3(d) Of The FLSA And Are Individually Liable For The Overtime And Recordkeeping Violations At Amazing Care**

The Third Circuit has recognized that the FLSA's definition of "employer" is "the

broadest definition that has ever been included in any one Act." *In re Enter. Rent-A-Car Wage*

*& Hour Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012) (quoting *U.S. v. Rosenwasser*, 323

U.S. 360, 363 n.3 (1945)).  Courts utilize the "economic reality" test for determining who are

employers under the FLSA.  *Id.* at 468-469.  "Economic reality" depends on the "totality of the

circumstances" rather than on rigid "technical concepts of the employment relationship." *Id.* at

467; *Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 667 F.3d 408, 418 (3d Cir. 2012).

"Significant control" is sufficient to establish employer status; ultimate control is not required.

*Enter. Rent-A-Car*, 683 F.3d at 468.

The Third Circuit acknowledged the flexibility and breadth of the FLSA's "employer"

definition by adopting four non-exhaustive factors: (1) authority to hire and fire employees; (2)

authority to promulgate work rules and assignments, and set conditions of employment,

including compensation, benefits, and hours; (3) day-to-day supervision, including discipline;

and (4) control of employee records, including payroll, insurance, and taxes.  *Id.* at 469.  The

Third Circuit stressed that analysis should not be confined to these four criteria, and that the

court "must instead consider all the relevant evidence, including evidence that does not fall

neatly within one of the above factors." *Id.*  Other indicia of "significant control" suggesting that

a person was an employer of an employee "may be persuasive" when incorporated with these

four factors.  *Id.* at 470.

6

Courts in this Circuit also permit claims for individual employer liability under the FLSA to proceed against a corporate officer with operational control over employees. *Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d 226, 235 (E.D. Pa. 2011) (citing *Dole v. Haulaway, Inc.* 723 F. Supp. 274, 286-87 (D.N.J. 1989), *aff'd* 914 F.2d 242 (3d Cir. 1990)) (holding that corporate officer who was responsible for deciding how the affected employees were paid was an employer and jointly and severally liable for unpaid wages); *Burroughs v. MGC Servs., Inc.*, No. 08-1671, 2009 WL 959961, at *4 (W.D. Pa. Apr. 7, 2009) (citations omitted); *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 923 (E.D. Pa. 1989) (subsequent history omitted). One court has specifically held that "it cannot be doubted" that an individual is an employer under the FLSA where he served as owner and president of a company and exerted control over his employees. *Castellino v. M.I. Friday, Inc.*, No. 11-261, 2012 WL 2513500, at *3 (W.D. Pa. June 29, 2012). Moreover, a corporate officer who was personally responsible for a violative practice is also likely to be liable as an FLSA "employer." *Art of Life, Inc.*, 836 F.Supp. 2d. at 235.

### i.    Defendant Christopher Kear is an "employer" under Section 3(d) of the FLSA

There is no genuine issue of material fact that Defendant Christopher Kear is an "employer" for purposes of the Section 3(d) of FLSA, 29 U.S.C. § 203(d), making him individually liable for the overtime and recordkeeping violations at Amazing Care. Defendant Christopher Kear is the president, sole owner, and administrator of Amazing Care. (SOF at ¶ 5). He has admitted that he was responsible for hiring, firing, setting pay rates, setting the conditions of employment, making payroll decisions and authorizing payroll payments for all workers at issue in this case. (SOF at ¶ 6). He has admitted that he was concerned about the cost of overtime, that he decided not to pay overtime due to the financial situation of Amazing Care, that he decided not to investigate the legality of that decision due to the cost of hiring an attorney,

7

and that he was responsible for instructing all of his employees that they would be reclassified as 1099 independent contractors.  (SOF at ¶¶ 64-76).

### ii.    Defendant Josephine Kilipko is an "employer" under Section 3(d) of the FLSA

Josephine Kilipko meets the FLSA's broad definition of "employer" and the Third Circuit's economic reality test.  She is a corporate officer for Amazing Care, specifically the Secretary of the company.  (SOF at ¶ 7).  She is responsible for overseeing nursing care, recruiting, hiring, training, firing, day-to-day supervision of all office staff and care providers, and the creation of plans of care governing the care to be provided to all of Amazing Care's patients.  (SOF at ¶ 8).  She reviews time and treatment records provided by HHAs and LPNs on a routine basis.  (SOF at ¶ 31).  As a corporate officer with operational control over Amazing Care's employees, she meets the definition of "employer."  *Art of Life, Inc.*, 836 F. Supp. 2d at 235.  She also satisfies all four non-exhaustive prongs of the Third Circuits economic reality test. *See Enter. Rent-A-Car*, 683 F.3d at 469.

### E.    Defendants' Workers Who Were Home Health Aides And Licensed Practical Nurses Were Employees Under The FLSA

In the Third Circuit, the existence of an employment relationship is determined by whether, "as a matter of economic reality, the individuals 'are dependent upon the business to which they render service.'"  *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382-83 (3d Cir. 1985) (adopting the economic reality test).  The Third Circuit has instructed that there are six factors that should be considered in connection with the economic realities test:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered required a special skill;

8

> 5) the degree of permanence of the working relationship; [and]
> 6) whether the service rendered is an integral part of the alleged
> employer's business.

*Pendleton v. JEVS Hum. Servs., Inc.*, 463 F. Supp. 3d 548, 559–60 (E.D. Pa. 2020); *see also*

*Razak v. Uber Techs., Inc.*, 951 F.3d 137, 142 (3d Cir. 2020); *DialAmerica Marketing, Inc.*, 757

F.2d at 1382. "[N]either the presence nor absence of any particular factor is dispositive" and

"courts should examine the 'circumstances of the whole activity.'"  *DialAmerica Marketing,*

*Inc.*, 757 F.2d at 1382.

### i.    Defendants control the manner in which work is performed

A business that dictates nurses' hourly wage, determines access to overtime hours, and

supervises nurses by monitoring patient care notes and by visiting job sites exercises control over

those nurses' work.  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988).  "Actual

control of the manner of work is not essential; rather, it is the right to control which is

determinative."  *Razak v. Uber Tech. Inc.*, 951 F.3d 137, 145 (3d Cir. 2020) (citing *Drexel v.*

*Union Prescription Ctrs.*, 582 F.2d 781, 785 (3d Cir. 1978)).

Here, Defendants unilaterally set the hourly wages for both HHAs and LPNs.  (SOF at ¶

15).  They unilaterally reclassified the status of employees to avoid paying overtime.  (SOF at ¶

71, 76).  They dictated the methods by which care was to be provided and required and reviewed

documentation weekly to confirm that HHAs and LPNs were complying with the care plans

created and promulgated by Defendants.  (SOF at ¶ 23-33).  They required HHAs and LPNs to

report their lateness or absence, reviewed their performance, and had the power to terminate any

HHA or LPN who failed to comply with Defendants' instructions.  (SOF at ¶ 34-37).

Defendants both established a clear right to control the manner in which their HHAs and LPNs

performed their work, and exercised actual control over the manner in which they did so.

### ii.    Neither HHAs nor LPNs have the opportunity for profit or loss depending upon managerial skill

Neither HHAs nor LPNs had the meaningful opportunity for profit or loss on the basis of their managerial skill.  Both HHAs and LPNs were paid at an hourly rate set by Defendant Christopher Kear.  (SOF at ¶ 17).  The hours available to HHAs and LPNs are dictated by the patients' care needs as determined by Defendants, not by the entrepreneurial spirit or managerial ability of the HHA or LPN.  (SOF at ¶ 4).  Pay for those hours is, in turn, subject to review and approval by Defendant Josephine Kilipko.  (SOF at ¶ 31).  In short, HHAs and LPNs had no opportunity to generate profit, and experienced no risk of loss, through their work for Defendants.

### iii.    HHAs do not invest in equipment or materials required for their tasks

Amazing Care provides equipment to its HHAs, including personal protective equipment ("PPE") such as barrier safety goggles, CPR shield face barriers, fluid resistant gowns, gloves, biohazard bags, sharps containers, and N95 respirators.  (SOF at ¶ 40).  There is no indication that any notable investment was made by LPNs in connection with their work beyond potentially purchasing their own PPE as needed.

### iv.    HHAs do not qualify as "skilled" and LPNs did not exercise their skills in an independent way

Defendants have acknowledged, as a factual matter, that HHAs are "unskilled" workers. While nurses, such as LPNs, may possess technical skills that require significant specialized training, that factor "does not weigh significantly in favor of independent contractor status" where the nurses do not use "these skills in any independent way" and depend "entirely on referrals to find job assignments," and the employer controls "the terms and conditions of the employment relationship."  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988); *Jimenez v. Best Behavioral Healthcare, Inc.*, 391 F.Supp.3d 380, 390 (E.D. Pa. 2019).  Here,

10

LPNs are not permitted to exercise their independent judgment or discretion and must follow the care plan created by Defendant Josephine Kilipko and approved by the patient's physician. (SOF at ¶ 30). They are almost entirely dependent upon Amazing Care for work assignments. (SOF at ¶ 18). Defendants set the terms and conditions of the employment relationship, including determining which assignments will be offered, what the rate of pay will be, the requirements of the position, and the policies as set forth in Amazing Care's Employee Handbook. (SOF at ¶¶ 17, 23, 30, 58-63). In light of these undisputed facts, the skills of the LPNs working for Amazing Care do not weigh in favor of independent contractor status.

> **v.    Both HHAs and LPNs have a high degree of permanence in their relationship with Defendants**

The permanence factor pertains to "(1) whether the employee had a set term with the employer, and (2) whether the employee also took outside work." *Jimenez*, 391 F.Supp.3d at 391 (citing *Donovan*, 757 F.2d at 1387). Where the individuals work continuously for the business, and many do so for long periods of time, the permanence factor weighs in favor of employee status. *Donovan*, 757 F.2d at 1385. Here, it was expressly part of Defendants' business model that HHAs and LPNs would work for them for years handling the same patient to ensure continuity of care, and could not take on additional work. (SOF at ¶¶ 42-43). As such, this factor weighs in favor of employee status for HHAs and LPNs.

> **vi.    The services provided by HHAs and LPNs are an integral part of Defendants' business**

The "integral" factor pertains to whether the workers performed the "primary work" of the business. *Donovan*, 757 F.2d at 1385. The primary business purpose of Amazing Care is to provide in-home care services. (SOF at ¶ 44). Defendants hire HHAs and LPNs to effectuate this business purpose and provide those services. (SOF at ¶¶ 45-46). It would be difficult to

imagine a more integral role in Defendants' business than that of the workers who provide the care for which Amazing Care is paid.

Ultimately, whether workers are employees depends upon "whether the workers are dependent on a particular business or organization for their continued employment." *Donovan*, 757 F.2d at 1385  The economic reality of their working relationship is that the HHAs and LPNs are economically dependent upon Defendants for their work because Defendants have the right to exercise and do exercise control over the HHAs and LPNs, because neither HHAs nor LPNs have the opportunity for profit or loss on the basis of their managerial skills, because there is a high degree of permanence to their working relationships with Defendants, and because they are integral to Defendants' business.  As such, both the HHAs and LPNs working for Defendants are employees as a matter of law.

### F.    Defendants Violated The FLSA's Overtime Requirements

Section 7 of the FLSA forbids an employer from employing any worker "for a workweek longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times the [worker's] regular rate" for the excess hours.  29 U.S.C. § 207(a)(1).  *See Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 183 (3d Cir. 1988), *cert. denied*, 488 U.S. 925 (1988).  Employees cannot waive their right to overtime under the FLSA by contract or agreement; to permit otherwise would nullify the purposes of the statute and frustrate Congressional intent.  *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S.728, 740 (1981).

Defendants' undisputed records demonstrate that they failed to pay their employees the proper time-and-a-half overtime premium for hours worked in excess of forty per workweek from at least July 13, 2020 through December 27, 2024.  (SOF at ¶¶ 50-54).  The payroll records indicate that Defendants have used and continue to use independent contractor status as a shield

12

to hide from their obligations under the FLSA. For 284 individuals, Defendants' own records indicate that HHAs and LPNs worked more than eighty hours in a biweekly period (and therefore, necessarily, more than forty hours in at least one workweek) and received only their regular rate of pay for all hours worked. (SOF at ¶ 55).

### G.    Defendants Violated The FLSA's Recordkeeping Requirements

Section 11(c) of the FLSA, 29 U.S.C. § 211(c), requires employers to "maintain accurate records to ensure that all workers are paid…for every hour worked." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984). The burden is on the employer to keep accurate wage and time records. *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 924 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990), *cert. denied*, 497 U.S. 1024 (1990).

Employers must maintain and preserve payroll records for at least three years. 29 C.F.R. §§ 516.2, 516.5(a). Payroll records for employees subject to the Section 7 overtime provisions of the FLSA – here, all of Defendants' HHA and LPN employees – must include: their time and day of the start of their workweek, regularly hourly rate of pay, hours worked each day and each workweek, total weekly straight-time earnings, total weekly overtime premium pay, total additions to or deductions from wages, total wages paid each pay period, and date of payment and period covered by payment. 29 C.F.R. § 516.2(a). Employers must also preserve "all basic time and earning cards or sheets on which are entered the daily starting and stopping time of individuals" for two years from the date of last entry. 29 C.F.R. § 516.6.

Defendants' pay records do not reflect premium pay for overtime hours for employees who worked overtime and were misclassified by Defendants as independent contractors. (SOF at ¶ 53). Defendants' pay records also do not reflect daily or weekly straight-time earnings or wages earned, instead reflecting only biweekly earnings. (SOF at ¶ 53). As such, Defendants

13

are not in compliance with 29 C.F.R. §§ 516.2(a)(7)-(8), and in violation of Section 11(c) of the FLSA.

### H.    Defendants' Violations Of The Section 7 Overtime Requirements Were Willful

While the general statute of limitations for minimum wage and overtime violations under the FLSA is two years, an employer's willful conduct extends the back wage period by an additional year.  29 U.S.C. § 255(a).  A willful violation of the FLSA occurs when an employer knows or shows reckless disregard for the matter of whether its conduct is prohibited by the FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Reckless disregard can be shown through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Mumby v. Pure Energy Services (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (citing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007)).  A finding of willfulness does not necessarily require prior violations or litigation.  *Reich v. Montfort, Inc.*, 144 F.3d 1329, 1334-35 (10th Cir. 1998).  Conduct need not be "egregious" in order to be willful.  *Stone v. Troy Construction, LLC*, 935 F.3d 141, 149 (3d Cir. 2019).

An employer's awareness of possible FLSA violations, combined with an "indifference toward the requirements imposed" by the statute, supports a finding of willfulness. *Garcia v. Tenafly Gourmet Farms, Inc.*, No. 11-6828, 2012 WL 715316, at *2 (D.N.J. 2012) (internal citations omitted).  The FLSA's knowledge requirement can be met by showing that the employer knew the conduct might be illegal but failed to make a good faith effort to investigate its legality. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991) (affirming grant of summary judgment as to willfulness where employer adopted illegal pay practice because "the overhead was too high" on hourly pay with overtime).  Adopting an unlawful practice as a cost-saving measure, despite concerns about its legality, constitutes reckless disregard.  *Id.*

14

Recordkeeping violations are evidence of willfulness.  *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002).  Summary judgment is properly granted as to willfulness where the defendant complied with the FLSA with regard to its pay practices in one instance and arbitrarily failed to comply with the FLSA in another.  *See Sec'y U.S. Dep't of Labor v. Nursing Home Care Mgmt, Inc.*, No. 23-2284, 2025 WL 351599, at *6 (3d Cir. 2025) (affirming summary judgment as to willfulness where employer compensated HHAs for breaks taken during client visits, but not for breaks between client visits).

    Here, uncontroverted documentary evidence and testimony from Defendant Christopher Kear demonstrates that Defendants reclassified their employees as independent contractors for the purpose of avoiding their obligation to pay overtime.  (SOF at ¶¶ 67-76).  Both individual Defendants were well aware of the principle that an overtime premium of one and one-half times the regular rate is to be paid for hours worked over forty in a week.  (SOF at ¶¶ 58-66).  Defendant Christopher Kear admitted that he changed the classification of his employees to independent contractors in part to avoid having to pay overtime due to concerns about the impact on Amazing Care's business.  (SOF at ¶ 69).  He further admitted that he did not consult with an attorney about the legality of Amazing Care's pay practices and whether Amazing Care was required to pay its HHAs and LPNs overtime because he was concerned about the cost of hiring an attorney.  (SOF at ¶ 70).  Given that Defendants had actual knowledge of the requirement to pay overtime, their deliberate decision to reclassify their employees in a way that would, if justified, have allowed them to avoid paying overtime, demonstrates, at least, a reckless disregard for the requirements of the FLSA.  Therefore, Defendants' violations were willful and the appropriate statute of limitations for the recovery of back wages and damages is three years.

I.    **Defendants Are Liable For Liquidated Damages In An Amount Equal To Their Liability For Back Wages**

Under Section 16(c), the Secretary may recover both unpaid wages and an additional equal amount in liquidated damages for violations of Section 7 of the FLSA.  29 U.S.C. § 216(c). Liquidated damages are not punitive, but compensatory – they compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due.  *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991).  In challenging the appropriateness of liquidated damages, the employer bears the "plain and substantial" burden of establishing both good faith and reasonable grounds for the violation.  *Id.*  "In the absence of such proof, a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages."  *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971); *see also Claridge Hotel and Casino*, 846 F.2d 180 at 187; *Tri-County Growers, Inc.*, 747 F.2d at 129.

To carry its burden of establishing good faith, an employer must first show that it took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions. *Cooper Elec. Supply*, 940 F.2d at 908.  The employer must prove "an honest intention to ascertain and follow the dictates of the Act."  *Brunner*, 668 F.2d at 753.  Next, to establish "reasonableness" requires that the employer demonstrate that it had reasonable grounds for believing it was in compliance.  *Id.*  Reasonableness is an objective standard, and to satisfy the standard the employer must act "as a reasonably prudent man" under the same circumstances. "[I]gnorance alone is not sufficient in meeting the objective test."  *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).  Merely proving that the employer did not act intentionally, had good intentions, or was ignorant of the law is not sufficient to avoid liability for liquidated damages once a violation of the law is found.  *Reich v. Brenaman Electrical*

16

*Service*, Civ. No. 95-3737, 1997 WL 164235, at *8 (E.D. Pa. Mar. 28, 1997) (citing *Tri-County Growers, Inc.*, 747 F.2d at 129 (noting that "[a] good heart but an empty head does not produce a defense" against liquidated damages)).  An employer's burden of proof is thus "a difficult one to meet." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987).  "Double damages are the norm, single damages the exception[.]"  *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir 1986).

There is no genuine issue of material fact that Defendants made no good faith effort to comply with the FLSA.  Defendants Christopher Kear and Josephine Kilipko both admitted that they deliberately took steps to classify employees as independent contractors in order to avoid paying the overtime premium.  (SOF at ¶¶ 69, 76).  Defendants made no efforts to confirm what the law required because it would have been an unwanted expense to pay for an attorney.  (SOF at ¶ 70).  Instead, Defendant Christopher Kear reclassified their employees as independent contractors to avoid paying overtime.  (SOF at ¶¶ 71-76).  Given Defendants' actual knowledge of what constituted overtime hours worked, what constituted an overtime premium, and that Defendants deliberately manipulated their pay practices and worker classifications to evade paying what the law required, there is no basis to support a finding of good faith.  Neither could any reasonable employer have thought that it was proper to deliberately reclassify a large number of employees as independent contractors without any change in job duties or the relationship with the employer that would justify such a change.

**J.    The Amount Of Backwages Owed From July 13, 2020 Through December 27, 2024 Is $5,919,096.34**

"The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29

C.F.R. § 778.109.  "For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."  29 C.F.R. § 778.110(a).

Defendants' workweek, for pay purposes, ran from Saturday to Friday.  (SOF at ¶ 14). Wage and Hour Investigator Nata Mamulashvili, relying upon the pay and time records provided by Defendant, calculated the amount of overtime owed to each HHA and LPN included in the Secretary's Revised Schedule A for every biweekly period in which they worked more than eighty hours and did not receive overtime pay for the time period from July 13, 2020 through December 27, 2024.[3]  *See Anderson v. Mt. Clemens Pottery*, 382 U.S. 680, 688 (1946) (permitting calculation of damages by reasonable inference where employer failed to keep adequate records); (SOF at ¶¶ 56-57).  She did this by calculating the regular rate by dividing the total remuneration for every biweekly period in which the employee worked more than 80 hours by the total hours worked during that period.  (SOF at ¶ 57).  She then multiplied half of the resulting rate by the amount of hours worked in excess of eighty by that person in those biweekly periods.  The sum of all amounts of unpaid overtime for those individuals is $5,919,096.34. (SOF at ¶ 57).

### K.    Defendants' Violations Of The FLSA Warrant Injunctive Relief

Section 17 of the FLSA permits a court to enjoin violations of the FLSA. 29 U.S.C. § 217.  The question of whether an injunction should be granted is addressed to the sound discretion of the trial court.  *Haulaway, Inc.*, 723 F. Supp. at 288; *Donovan v. Rockwell Tire & Fuel, Inc.*, No. C-79—498, 1982 WL 2120, at *9 (M.D.N.C. Mar. 30, 1982) (citations omitted).

---

[3]    She was unable to calculate on the basis of every workweek in which hours worked exceeded forty because Defendants' recordkeeping practices failed to document hours worked on a weekly or daily basis.

Ordinarily, a court should grant prospective injunctive relief, even if the employer is in present compliance, unless it is convinced that there is not a reasonable probability of a recurrence of the violations. *See, e.g.*, *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980); *Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir. 1958); *Lenroot v. Kemp*, 153 F.2d 153, 156 (5th Cir. 1946); *Reich v. Cole Enter., Inc.*, 901 F. Supp. 255, 260 (S.D. Ohio 1993); *Brock v. Hamad*, No. 86-757-CIV-5, 1987 WL 46573, at *4 (E.D.N.C. Nov. 25, 1987). In deciding whether to issue a prospective injunction, courts have considered (1) the employer's previous conduct, (2) its current state of compliance, and (3) the dependability of any assurances that it will comply with the FLSA in the future. *See, e.g.*, *Reich v. Petroleum Sales*, 30 F.3d 654, 657 (6th Cir. 1994); *Martin v. Funtime*, 963 F.2d 110, 114 (6th Cir. 1992).

Injunctive relief is warranted based upon Defendants' past conduct. Although the FLSA only allows the Secretary to seek back wages for violations for a maximum of three years, Defendants' admissions make clear that Amazing Care has failed to pay overtime for a significant number of its employees since it began operating. As far back as March 2019, more than a year before the time frame subject to recovery in this matter, Defendants were misclassifying employees in order to evade their obligations under the FLSA. (SOF at ¶¶ 71-76). Defendants' current lack of compliance, in spite of active litigation and express notice by Wage and Hour that they are in violation of the law, also strongly supports the need for injunctive relief. Defendants have continued their violations through at least December 2024, the most recent month for which the Secretary has pay records. (SOF at ¶¶ 56-57).

To the extent Defendants offer any assurance to the Court going forward, the Court should not depend upon them. *See Marshall v. Chala Enter., Inc.*, 645 F.2d 799, 804 (9th Cir. 1981) (mere assurances of present and future compliance are insufficient to justify denial of an

19

injunction).  It is undisputed that Defendants have failed to pay overtime to the HHAs and LPNs

in question for years.  (SOF at ¶¶ 56-57, 71-76).  After being informed that their pay practices

violated the FLSA, they have continued to stand by their misclassification of LPNs and refused

to pay overtime.  (SOF at ¶¶ 56-57).  Injunctive relief is therefore necessary to effectuate the

FLSA's purpose to protect employees from oppressive hours without appropriate pay.

## III.    CONCLUSION

The record demonstrates clearly that there are no genuine issues of material fact in this

matter.  Defendants willfully violated, and continue to violate, the Section 7 overtime

requirements of the FLSA by not paying the required premium due for overtime hours worked

and by misclassifying their employees as independent contractors in an effort to justify paying

straight time for those overtime hours.  They are in violation of Section 11(c)'s recordkeeping

provisions in that their records do not document overtime pay and do not record the required

information on a daily or weekly basis.  The violations are established by Defendants'

admissions, and are plainly reflected in the records they maintained and provided.

Therefore, Plaintiff is entitled to summary judgment on each of these issues.


                                    Respectfully submitted,


    Mailing Address:                         **UNITED STATES DEPARTMENT OF LABOR**

    U.S. Department of Labor             Jonathan Snare
    Office of the Regional Solicitor       Acting Solicitor of Labor
    1835 Market Street
    Mailstop SOL/22
    Philadelphia, PA 19103-2968          Samantha N. Thomas
    (215) 861-5124 (voice)               Regional Solicitor
    (215) 861-5162 (fax)
    gosfield.alexander.e@dol.gov         Adam Welsh
                                         Regional Wage and Hour Counsel

                                    20

Date: May 16, 2025

/s/ *Alexander E. Gosfield*
Alexander E. Gosfield
Senior Trial Attorney
PA State Bar # 209537

*Attorneys for LORI CHAVEZ-DEREMER*
*Secretary of Labor, Plaintiff*