**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LORI CHAVEZ-DEREMER,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>v.<br><br>AMAZING CARE HOME HEALTHCARE SERVICES, LLC, CHRISTOPHER KEAR, and JOSEPHINE KILIPKO,<br><br>Defendants. | Civil Action No. 2:24-cv-00190-TJS |

**SECRETARY OF LABOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**


**I. INTRODUCTION ..... 1**

**II. ARGUMENT ..... 1**

**A. Quality Of The Evidence ..... 1**

**B. LPNs Are Employees of Defendants ..... 2**

**C. Defendants' Factual Assertion As To Damages Is Wrong ..... 9**

**D. Given The Concession That Defendants Misclassified HHAs, There Is No Dispute As To Liquidated Damages Or Willfulness ..... 11**

**E. Defendant Kilipko Is An Employer Under Third Circuit Law ..... 13**

**F. Injunctive Relief Is Appropriate At Summary Judgment In FLSA Matters ..... 14**

**III. CONCLUSION ..... 15**

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Anderson v. Mt. Clemens Pottery*,
382 U.S. 680 (1946) ........ 21

*Badon v. Berry's Reliable Resources, LLC*,
2021 WL 2822252 (E.D. La. July 7, 2021) ........ 9, 11

*Baystate AlternativeStaffing, Inc. v. Herman*,
163 F.3d 668 (1st Cir. 1998) ........ 19

*Brock v. Superior Care, Inc.*,
840 F.2d 1054 (2nd Cir. 1988) ........ 6

*Brooks v. Village of Ridgefield Park*,
185 F.3d 130 (3d Cir. 1999) ........ 16

*Diaz v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
2011 WL 13318429 (S.D. Tx. Aug. 12, 2011) ........ 18

*Donovan v. DialAmerica Marketing, Inc.*,
757 F.2d 1376 (3d Cir. 1985) ........ 3

*Figuera v. All VIP* Care Inc.,
2023 WL 11931146 (S.D. Fl. Sept. 25, 2023) ........ 9, 12

*Figuera v. All VIP Care Inc.*,
2023 WL 11931169 (S.D. Fl. July 19, 2023) ........ 9

*In re Enter. Rent-A-Car Wage & Hour Practices Litig.*,
683 F.3d 462 (3d Cir. 2012) ........ 18, 19, 20

*Irving v. Chester Water Auth.*,
439 Fed.Appx. 125 (3d Cir. 2011) ........ 3

*Martin v. Cooper Elec. Supply Co.*,
940 F.2d 896 (3d Cir. 1991) ........ 15, 16

*Martin v. Selker Bros., Inc.*,
949 F.2d 1286 (3d Cir. 1991) ........ 17

*Pizzellav. Diner*,
2021 WL 1649517 (E.D. Pa. Apr. 27, 2021) ........ 21

*Razak v. Uber Tech, Inc.*,
951 F.3d 137 (3d Cir. 2020) ........ 6, 8, 9

*Rutherford Food Corp. v. McComb*,
331 U.S. 722 (1947) ........ 5

*Sec'y of Labor v. Caring First, Inc.*,
2017 WL 11696782 (M.D. Fl. Aug. 10, 2017) ........ 8, 9, 10

*Solis v. A-1 Mortg. Corp.*,
934 F.Supp.2d 778, (W.D. Pa. 2013) ........ 21

*Souryavong v. Lackawanna Cty.*,
872 F.3d 122 (3d Cir. 2017) ........ 17

*Stone v. Troy Constr., LLC*,
935 F.3d 141 (3d Cir. 2019) ........ 17

*Su v. Nursing Home Care Mgmt. Inc.*,
2023 WL 3440237 (E.D. Pa. May 12, 2023) ..... 20
*Walsh v. Fusion Japanese Steakhouse, Inc.*,
548 F.Supp.3d 513 (W.D. Pa. 2021) ..... 3, 21
*Walsh v. La Tolteca Wilkes Barre, Inc.*,
2023 WL 8458238 (M.D. Pa. Dec. 6, 2023) ..... 20
*Su v. WiCare Home Care Agency, LLC*,
2024 WL 3598826 (M.D. Pa. July 31, 2024) ..... 20

Statutes

29 U.S.C. 213(a)(15) ..... 16

Rules

Fed. R. Civ. P. 56(a) ..... 15
Fed. R. Civ. P. 56(c)(2), (4) ..... 2
Fed. R. Civ. P. 56(e) ..... 14
Fed. R. Evid. 602 ..... 2
Fed. R. Evid. 801 ..... 2

Regulations

29 C.F.R. 552.109(a) ..... 16

## I. INTRODUCTION

It is undisputed that Defendants made a blanket decision to misclassify their employees to avoid paying overtime. Defendants have conceded that summary judgment is appropriate with regard to their overtime violations as to HHAs, the employee status of HHAs, and that Defendant Christopher Kear is a 3(d) employer under the Fair Labor Standards Act ("FLSA").[1] Their efforts to find a line to hold with regard to licensed practical nurses ("LPNs"), liquidated damages, and willfulness fail because their arguments as to each ignore the fact that they deliberately misclassified their HHA employees. Their decision to misclassify *all* workers (as a group) solely to avoid overtime undermines any notion that they somehow separately reached a good faith conclusion about the classification of the LPNs. Their remaining arguments either completely ignore established Third Circuit precedent or woefully fail to address the undisputed factual record. As such, Plaintiff's Motion for Summary Judgment should be granted.

## II. ARGUMENT

### A. Quality Of The Evidence

In an effort to distract from their own admissions and the undisputed facts, Defendants argue that Plaintiff "mailed this one in." ECF No. 45 at 15. But the fact that the Secretary filed a clear and concise motion speaks to the straightforward nature of Defendants' violations and the damning admissions Defendants made in their depositions that, along with Defendants' records, justify summary judgment on their own. And if any of the facts in question were in dispute, Defendants would have cited to evidence of such rather than claiming that their own unequivocal and straightforward deposition testimony is inadequate in the absence of testimony from other

---

[1] Defendants did not expressly concede the last point, but presented no facts or argument to suggest that Defendant Kear is not a 3(d) employer.

witnesses. Their complaint about a lack of distinction between the two groups is not due to Plaintiff failing to draw any distinction; Plaintiff's Motion clearly indicates what evidence applies to one, the other, or both. Their complaint is due to the fact that the undisputed evidence shows no meaningful difference between how Defendants treated LPNs and HHAs. As set forth in greater detail *infra*, the factual record is abundantly clear, and Defendants' conclusory attempts at mischaracterization are meant to supply them with a defense that the actual evidence and law cannot.

**B. LPNs Are Employees of Defendants**

In claiming that LPNs are not employees, Defendants fail to apply, explain, argue, or even cite to the controlling standard. *See* ECF No. 45 at 15-19. Instead, Defendants cite exclusively to the self-serving deposition testimony of Defendant Josephine Kilipko and to hearsay statements reported to the Wage and Hour investigator[2] in the hope that the Court will craft an argument that they could not. *See* ECF No. 45 at 17-19. Some of those citations pertain to organizations (Williams Loving Care and Peter's Care Solutions LLC) that are not part of this litigation, and the statements in the narrative upon which Defendants rely confirm that those two entities had characteristics of independent contractors that do not apply to other LPNs.[3] *See* ECF

[2] Defendants' citations to the Wage and Hour Investigator's ("WHI") comments are not evidence that can be relied upon for summary judgment. *See* Fed. R. Civ. P. 56(c)(2), (4). Although the WHI's statements are themselves admissions under Fed. R. Evid. 801, the WHI has no firsthand knowledge of the facts stated, such that these statements would not be admissible under Fed. R. Evid. 602 unless they were derived from statements by Defendants or their representatives. In that case, they would be inadmissible by Defendants as hearsay. Fed. R. Evid. 801, 802.

[3] According to the exhibit upon which Defendants rely, Williams Loving Care and Peter's Care Solutions LLC are two specific homecare agencies that subcontracted with Amazing Care. ECF No. 45-1 at 24. These agencies, in contrast to the LPNs at issue, appear to hire and fire their own workers, bring their own clients to Amazing Care, assign patients to their workers, manage their workers directly, have opportunities for profit and loss, negotiate on the open market, and work for other agencies in addition to Amazing Care. ECF No. 45-1 at 24-27.

45-1 at 23-29 (Defendants' Exhibit C) (distinguishing between Williams Loving Care and Peter's Care Solutions and misclassified employees); *compare* ECF 41-10 (Back Wage Summary) (not including calculation for Williams Loving Care or Peter's Care Solutions).

Defendants rely almost entirely on the self-serving deposition testimony of Defendant Kilipko to support their argument that LPNs are not employees. ECF No. 45 at 17-19. "[S]elf-serving deposition testimony is insufficient to raise a genuine issue of material fact" where it is contradicted by other record evidence. *Irving v. Chester Water Auth.*, 439 Fed.Appx. 125, 127 (3d Cir. 2011); *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F.Supp.3d 513, 530 (W.D. Pa. 2021). Here, Defendants' citations to Defendant Kilipko's testimony are either irrelevant to the six factors set forth in the Third Circuit's economic reality test, *see Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985), or are contradicted by admissions in Defendant Kear's deposition, and by "independent contractor agreements" referenced by Defendants in support of their argument, but not cited. Defendant Kear admitted that, for *both* LPNs and HHAs, Defendants controlled the manner in which work was performed by assigning them patients, requiring and providing training, unilaterally setting hourly wages, creating the plan of care for each patient, overseeing its implementation, reviewing the work performed on a regular basis to ensure it is satisfactory to Defendants, requiring any and all changes to the care plan to go through Defendants, requiring and reviewing weekly documentation of the care provided, instructing HHAs and LPNs what to do if they fail to adhere to the care plan, requiring them to notify Amazing Care of lateness or absence, giving performance reviews, and imposing discipline, up to and including firing, for HHAS and LPNs who fail to provide care as directed. (SOF at ¶¶ 15, 18, 20, 23-28, 30-37). Both Defendants admitted permanence to the working

relationship, as both HHAs and LPNs work for Defendants for several years in a row, and LPNs work sufficient hours for Amazing Care that they cannot take second jobs. (SOF at ¶¶ 42-43).

None of Defendants' list of facts rebuts Defendants' right to control the manner in which work was performed by LPNs, the LPNs' lack of opportunity for profit or loss, the permanence of the working relationship between Defendants and the LPNs, or the fact that the LPNs render a service integral to Defendants' business. Defendants attempt to rely upon the fact that "LPNs **executed independent contractor agreements** and were paid via 1099 and without withholdings." ECF No. 45, at 18 (emphasis in original). Defendants failed, however, to attach any examples of such agreements or other signed materials for either LPNs or HHAs. Had they done so, the Court would have seen that Defendants used materially identical agreements for HHAs, whom they concede are employees, and LPNs.[4] *Compare* Ex. A (HHA Independent Contractor Agreement), *with* Ex. B (LPN Independent Contractor Agreement).

In their "independent contractor agreement," Defendants established the following, all of which support an employment relationship under Third Circuit law:

1) The LPN shall "provide services under the supervision of [Defendants];"
2) "[Amazing Care] has the exclusive authority to admit and discharge clients;"
3) The LPN "is required to adhere to the Agency's policies and procedures;"
4) The LPN "will wear an identification badge at all times when providing services to [Amazing Care] clients;"
5) The LPN "will not under any circumstances bill the patient/client;"

[4] Note also that agreements labeling a worker as an independent contractor are not determinative of employee status. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("an 'independent contractor' label does not take the worker from the protection of the Act.").

6) If the LPN cannot begin work within seven to ten working days, they must notify Amazing Care, who will notify the patient and physician.

*See* Ex. B. These all support the first and sixth employment factor, in that they demonstrate Defendants' ability to and actual control over their LPNs and the fact that LPNs' work is integral to the business, and 1, 2, and 5 also contribute to the second factor, the lack of opportunity for profit or loss. *See Razak v. Uber Tech, Inc.*, 951 F.3d 137, 145 (3d Cir. 2020); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2nd Cir. 1988). While the relationship and duties did not change, Defendants nonetheless arbitrarily changed their classification of LPNs (along with HHAs) from employees to independent contractors, including reissuing offer letters with the term "independent contractor" added as the employee type. *Compare* Ex. C (Employment Offer to LPN 2018) *with* Ex. D ("Independent Contractor Employee" Offer to LPN 2020).

Defendants' other work-related documents routinely refer to LPNs as employees. Before hiring an LPN, Defendants required the LPN to fill out a form entitled "PRE-EMPLOYEMENT [sic] QUESTIONS LPN/RN." Ex. H (LPN Questionnaire). They required LPNs to fill out an "Application for Employment." Ex. I (Employment Application). They required LPNs to sign a form entitled "LPN/RN job acceptance," also signed by Defendant Kilipko, that states "we are delighted to extend this offer of employment," and has a line for "Employee Signature" below the statement "I accept the employment, and its terms, contained in this letter. Ex. J (LPN/RN job acceptance form). Even Defendants' position description for "LICENSED PRACTICAL NURSE" has an acknowledgement line that includes spaces for "EMPLOYEE NAME" and "EMPLOYEE SIGNATURE." Ex. N (LPN Position Description). They stored this information in what they labeled an "EMPLOYEE PERSONNEL BINDER." Ex. O (Employee Personnel Binder Cover Page).

Defendants' documents also embody the level of control that Defendants admitted to in their depositions and now attempt to disclaim. Defendants issued to LPNs memos addressed "to all employees" and required them to sign, date, and return those memos for Defendants' records. *See* Ex. E (Memo to All Employees signed by LPN). Defendant Josephine Kilipko conducted initial and periodic competency evaluations on various medical skills. Ex. K (Evaluation Records). The orientation checklist for LPNs has two spaces for "EMPLOYEE SIGNATURE," indicates that it is "FOR CURRENT EMPLOYEES," and includes such items as "Review employee benefits," "Review of all Agency policies and procedures related to new job duties," and "Performing other duties as assigned by the Administrator." Ex. L (Orientation Checklist). Defendants required LPNs to complete an "EMPLOYEE SAFETY CHECKLIST" in which the "[e]mployee is to initial each box when instruction is completed and understood" and then sign in the box labeled "Employee Signature." Ex. M (Employee Safety Checklists).

Defendants' other claims regarding employee status are similarly belied by their records. Defendants attempt to disclaim their deposition testimony by asserting that they provided no training of substance. In fact, Defendants required their LPNs to receive annual training on an exhaustive range of subjects, including bloodborne pathogens, bag techniques, oxygen therapy, respiratory disorders, and seizures and strokes. *See* Ex. F (Annual/Yearly In-Services Lists for 2022 and 2021). Defendants claim that they did not provide their employee handbook to their LPNs, despite Defendant Kear's testimony admitting that they *did* provide them (*see* SOF at ¶ 58). This is also confirmed by signed copies of page six of Defendants' employee handbook signed by LPNs, which states that "[e]ach employee is required to execute the document below" and that "[a] copy of this document will be kept in the Employee's personnel folder." Ex. G (Employee Policies and Procedures Signed Pages). Defendants claim that LPNs communicated

directly with patients about lateness and "were free to take any time off," but Defendant Kilipko admitted that they had to call Amazing Care to notify of absence or lateness (*see* SOF at ¶ 34). This is confirmed by Defendants' "FIELD EMPLOYEE STANDARDS AND PROCEDURES" signed by LPNs and in which Defendants state, in all capital letters, "PLEASE DO NOT CALL YOUR PATIENT DIRECTLY" in the event of lateness, and to instead "notify the Agency [Amazing Care] immediately" if the LPN will "be five minutes late" or more or absent. Ex. Q (Field Employee Standards and Procedures). Defendants simply cannot evade the admissions in their prior testimony and their own documents.

Defendants fail to cite a single authority from the Third Circuit in support of their argument as to the employee status of LPNs. They instead cite heavily to a series of unpublished district court cases from Florida, one from Louisiana, and a state court case from Illinois. ECF No. 45 at 15-17. The Florida cases apply the 11th Circuit's approach to the economic reality factors, which is different from the 3rd Circuit's approach. *Compare Razak v. Uber Tech. Inc.*, 951 F.3d 137, 145 (3d Cir. 2020) *with Sec'y of Labor v. Caring First, Inc.*, 2017 WL 11696782, at *3 (M.D. Fl. Aug. 10, 2017). The Louisiana case applies a five-factor test, rather than the six-factor test of the Third Circuit. *Compare Razak*, 951 F.3d at 142 (six-factor test, including whether work is "integral") *with Badon v. Berry's Reliable Resources, LLC*, 2021 WL 2822252, at *4 (E.D. La. July 7, 2021) (five-factor test excluding integral factor).

Regardless of the applicable test, the cases they cite are readily distinguishable and the LPNs are employees under either test.[5] *Sec'y of Labor v. Caring First, Inc.*, involved nurses

[5] Defendants also mischaracterize *Figuera v. All VIP Care Inc.* as "den[ying] the plaintiff's motion for summary judgment" when in fact the court was denying *defendant's* motion. *See* 2023 WL 11931146, at *4 (S.D. Fl. Sept. 25, 2023); *see also Figuera v. All VIP Care Inc.,* 2023 WL 11931169, at *1-2 (S.D. Fl. July 19, 2023) (striking plaintiff's motion for summary judgment due to non-compliance with local rule, without reaching merits of motion).

who, unlike LPNs working for Defendants, "set their own working schedules" and were not subject to discipline for failing to follow the business' guidelines. 2017 WL 11696782, at *3 (M.D. Fl. Aug. 10, 2017). There was no record there as to how frequently the defendant visited homes or reviewed paperwork to supervise the nurses. *Id.* A "significant portion" of nurses in that case worked for other entities besides defendants; here Defendants admitted it was not possible for LPNs to do so. *Id.* at *4. Approximately half the nurses in that case worked for defendants for less than a year, whereas here Defendants maintained working relationships for multiple years in a row to ensure stable care for their primarily child-aged patients. *Id.* at *5.

In *Badon v. Berry's Reliable Resources, LLC*, applying a five-factor test that did not consider the "integral" nature of the work performed, the district court denied cross motions for summary judgment on the issue of employee status where the plaintiffs appeared to rely solely upon their own affidavits to establish an employment relationship. 2021 WL 2822252, at *4 (E.D. La. July 7, 2021). In other words, plaintiffs in that matter lack anything approaching the admissions by Defendants in their depositions here, or the overwhelming volume of documentary evidence corroborating those admissions. *Id.*

In *Figuera*, defendants initially characterized the plaintiff as an independent contractor upon hiring, as opposed to here where Defendants recategorized their employees *en masse*. 2023 WL 11931146, at *4. The defendants there "did not prevent Plaintiff from having other employment or contractual relationships, did not provide training to Plaintiff, and did not provide performance evaluations to Plaintiff[.]" *Id.* Defendants there also "merely facilitated the hours authorized for Plaintiff's choosing and only required Plaintiff to log hours" in aid of authorizing payment and the defendant business "merely served as a middleman" between the worker, the client, and the insurance company. *Id.* By contrast, Defendants here provided routine training,

assigned work sufficient to prevent LPNs and HHAs from taking on other work, provided regular performance evaluations, and controlled the client relationship directly, rather than acting as a middleman. (SOF at ¶¶ 18-37, 43).

As Defendants have failed to cite any case law that applies the Third Circuit's approach to the economic reality test, there is no legal support for Defendants' position. Defendants have made broad and unequivocal admissions that LPNs are within their control and supervision: LPNs are trained by them, report to them weekly, work for rates set by Defendant Christopher Kear, and call in to notify Defendants of lateness or absence. (SOF at ¶¶ 15, 20, 27-32, 34). Defendants check with family members to ensure care is provided as they wish, review the performance of LPNs, and discipline LPNs as needed to ensure the care is provided consistent with their standards. (SOF at ¶¶ 33, 35-37). Defendants have admitted that LPNs virtually never subcontract out coverage for their patients, and have no capacity to work any other jobs given the time requirements of Amazing Care's clients. (SOF at ¶¶ 38-39, 43). They have admitted that LPNs commonly work for them for several years in a row due to the nature of their clients and as part of their business model. (SOF at ¶¶ 42). They have admitted that LPNs perform work that consists of the primary business purpose of Amazing Care. (SOF at ¶¶ 44, 46). *All* of these facts are also true for HHAs, whose employee status Defendants do not dispute. Given these undisputed facts, LPNs satisfy the Third Circuit's economic reality test and are just as much employees of Defendants as Defendants' HHA employees.

### C. Defendants' Factual Assertion As To Damages Is Wrong

Defendants do not address computation of Plaintiff's damages in their brief. Instead, they make the blanket assertion in their Counterstatement of Facts that there are factual issues as to Plaintiff's calculation of damages. In doing so, they do not address Plaintiff's Exhibit G, the

back wage summary, but instead craft their own table which they then proceed to blatantly misread. They claim this table reveals a miscalculation only as to one employee, but that "miscalculation" is in fact the result of their own error. Defendants' Exhibit B is a calculation, performed by an unknown individual who has not sworn as to its accuracy, purporting to demonstrate that Maria Lewis, a.k.a. At Home Assisted Living, is not owed $356,058.55. Unfortunately for Defendants, Plaintiff has not claimed, and their own chart does not show, that Ms. Lewis is owed that amount. According to Defendants' own chart, that amount is owed to Emma Health Services LLC. Thus, the discrepancy they note which they claim shows "immense factual issues" is not the result of any miscalculation by the Plaintiff, but of Defendants' own error in reading their own exhibit.[6] To the extent Defendants claim there are other miscalculations, as they claimed in a footnote, they were obligated to submit that evidence in order to meet their burden of production. *See* Fed. R. Civ. P. 56(e). Suggesting that they could have done so, but chose to reserve it for a potential surreply (which is prohibited by Section IV.B. of this Court's policies and procedures), is insufficient, especially given that the only miscalculation they identified was the result of their own obvious error.

Though there is no computational error in Plaintiff's calculation, Defendants have, at least implicitly, raised statute of limitations as an affirmative defense in their Response. *See* ECF No. 45-1 at 192-195 (Tolling Agreement). In light of that, Plaintiff attaches a calculation that does not include any back wages for hours worked prior to July 13, 2020 as Exhibit P. The total back wages from July 13, 2020 through December 27, 2024 are $5,593,010.42.

---

[6] Defendants' assertion that the back wage calculation is unreliable because their own exhibit, which appears to be derived from an Excel file originally produced by Plaintiff, has a greater level of precision than is necessary to calculate a monetary value is absurd on its face.

Notably, Defendants do not dispute any of the facts underlying Plaintiff's back wage calculation. That is not surprising, as the calculation is based on Defendants' own records. They merely claim the existence of math errors, but even if that were correct – it is not – it would be a basis for adjusting the back wage award, not denying summary judgment on the issue entirely. *See* Fed. R. Civ. P. 56(a) (summary judgment shall be granted where there is no genuine dispute of material fact and movant is entitled to judgment as a matter of law).

**D. Given The Concession That Defendants Misclassified HHAs, There Is No Dispute As To Liquidated Damages Or Willfulness**

Defendants admitted in their depositions that they deliberately misclassified their employees as independent contractors to avoid paying overtime and have now admitted as a matter of law that they misclassified their HHA employees. ECF No. 45, at 1; (SOF at ¶¶ 69-76). In light of this, Defendants cannot meet their burden of establishing "good faith" under the FLSA, which requires "an honest intention to ascertain and follow the dictates of the Act." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991).[7] Defendants' inaccurate discussion of changes in relevant law that occurred over 10 years ago is irrelevant. There is no evidence Defendants ever believed or relied upon a belief that they were entitled to claim a statutory exemption from the FLSA's overtime requirements with respect to their employees.[8]

---

[7] Defendants' Counterstatement of Facts improperly suggests Plaintiff bears the burden regarding liquidated damages. Their heading, "Plaintiff is unable to show the absence of good faith," misstates the law. Defendants – not the Plaintiff – bears the "plain and substantial" burden under the law of establishing a defense to liquidated damages. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991).

[8] Defendants incorrectly refer to the companionship services exemption at 29 U.S.C. 213(a)(15), which applies to a small fraction of workers who provide in-home care, as the "home-health care exemption." In any event, Defendants do not dispute that the Department's regulation prohibiting third party employers like Defendants from claiming the companionship services exemption, 29 C.F.R. 552.109(a), was in effect and unchanged during the time period relevant to the allegations of FLSA violations in this case.

Defendants' citation to an unreported case in which two separate agencies reviewed and approved a business' independent contractor designation is inapplicable here, as the agency that "audited" Amazing Care did not look at Defendants' pay practices. ECF No. 41-4 (Deposition of Christopher Kear) at 74:23-75:13. Defendant's appeal to their post-investigative conduct is unavailing, as this is "*retrospective* analysis of an employer's conduct with respect to violations of the FLSA, not appraisal of an employer's post-violation conduct." *Cooper Elec. Supply*, 940 F.2d at 909-10. Defendants' blanket assertion of ignorance is legally insufficient to support objective reasonableness. *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999). Defendants have failed to meet both requirements of their defense to liquidated damages.

The undisputed fact that Defendants misclassified their HHA employees to avoid paying overtime is equally dispositive of the issue of willfulness. The language Defendants rely upon to argue to the contrary, from *Souryavong v. Lackawanna Cty.*, 872 F.3d 122 (3d Cir. 2017), has been since limited by the Third Circuit when it clarified that *Souryavong*'s implementation of an "egregiousness" standard was "non-binding dictum" that, if given legal effect, "would be contrary to the Supreme Court's instructions on the meaning of willfulness." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (rejecting the argument that willfulness requires "egregiousness" on the level of what was described in the cases cited in *Souryavong*). Here, it is undisputed that Defendants deliberately changed their practice from a lawful, more expensive one to an unlawful practice as a cost-saving measure; this is exactly the sort of behavior that the Third Circuit has found constitutes reckless disregard such that the conduct is willful. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991).

**E. Defendant Kilipko Is An Employer Under Third Circuit Law**

The Defendants once again ignore Third Circuit law in favor of inconsistent precedent in other circuits and unpublished out-of-circuit district court opinions. *Diaz v. Univ. of Tex. M.D. Anderson Cancer Ctr.* applied a different set of factors under Fifth Circuit law to assess whether the alleged employer "effectively dominates" the business' administration. 2011 WL 13318429, at *3-4 (S.D. Tx. Aug. 12, 2011); *contra In re Enter. Rent-A-Car Wage & Hour Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012) (FLSA definition of "employer" is "broadest definition" ever in any one act and "[s]ignificant control" would be sufficient to establish employer status). *Baystate Alternative Staffing, Inc. v. Herman* is a First Circuit case applying a completely different form of the "economic reality" test that applies an additional layer of protection associated with the corporate form, and without consideration of the factors set forth in Third Circuit law. 163 F.3d 668, 676-77 (1st Cir. 1998); *contra Enter. Rent-A-Car*, 683 F.3d at 469-70 (adopting broader, more flexible four factor analysis). All the other cases cited are out-of-circuit, unpublished district court cases that do not apply the Third Circuit's economic reality test.

Defendants' only argument that Defendant Kilipko is not an "employer" is that she did not handle pay or compensation. Control over pay, standing on its own, is not, however, one of the four factors. It is relevant to the second factor, "authority to promulgate work rules and assignments, and set conditions of employment," which includes not only compensation, but hours. Even if that factor were missing, the balance of factors would still support employer status for Ms. Kilipko. *See Su v. WiCare Home Care Agency, LLC*, 2024 WL 3598826, at *10 (M.D. Pa. July 31, 2024) (Slip Copy) (home care executive was 3(d) employer even where there was no evidence to support one factor). Here, however, it is undisputed that Defendant Kilipko had responsibility over work rules and assignments, including requiring HHAs and LPNs to send

her documentation every week as to the time worked and care provided so she could review and ensure that time worked and care provided were documented correctly. (SOF at ¶ 31). She satisfies all four factors and is therefore an employer under the FLSA as interpreted in the Third Circuit. *See Enter. Rent-A-Car*, 683 F.3d at 469-70; (SOF at ¶¶ 7, 8, 31).

**F. Injunctive Relief Is Appropriate At Summary Judgment In FLSA Matters**

Defendants incorrectly state that injunctive relief cannot be appropriate at the summary judgment stage. In fact, many courts have granted summary judgment as to injunctive relief in connection with FLSA cases, including home care cases. *See, e.g.*, *WiCare Home Care Agency*, 2024 WL 3598826, at *21 (granting injunctive relief at summary judgment); *Walsh v. La Tolteca Wilkes Barre, Inc.*, 2023 WL 8458238, at *21 (M.D. Pa. Dec. 6, 2023) (same); *Su v. Nursing Home Care Mgmt. Inc.*, 2023 WL 3440237, at *15 (E.D. Pa. May 12, 2023) (same); *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F.Supp.3d 513, 532-33 (W.D. Pa. 2021) (same); *Solis v. A-1 Mortg. Corp.*, 934 F.Supp.2d 778, (W.D. Pa. 2013) (same). Despite Defendants claims of being "cooperative," they violated the FLSA and have continued to do so following the commencement both of the investigation and the filing of the Complaint in this case. (SOF at ¶¶ 56-57, 71-76). In light of that conduct, the Court should exercise its discretion to enjoin future violations of the FLSA.[9] *See Sec'y U.S. Dept. of Labor v. Mosluoglu, Inc.*, 2023 LW 5972044, at *5 (3d Cir. Sept. 14, 2023) (setting forth injunctive relief standard).

[9] Defendants' argument that there can be no summary judgment as to recordkeeping violations because they require injunctive relief is similarly flawed. Even the court in *Pizzella v. Diner*, which Defendants cite for the false proposition that FLSA injunctive relief cannot be granted at summary judgment, granted summary judgment as to recordkeeping. 2021 WL 1649517, at *6 (E.D. Pa. Apr. 27, 2021). This is appropriate, as recordkeeping violations are relevant to the consideration of damages. *See Anderson v. Mt. Clemens Pottery*, 382 U.S. 680, 688 (1946) (permitting calculation of damages by reasonable inference where employer failed to keep adequate records).

## III. CONCLUSION

The record demonstrates clearly that there are no genuine issues of material fact in this matter. Defendants have admitted that they misclassified their HHA employees, and that they did so for their financial benefit to avoid paying overtime. The undisputed evidence, including the documentary evidence attached hereto that negates Defendants' self-serving factual claims, demonstrates that they did the same for LPNs. Defendants have failed to cite any contradictory material evidence or controlling case law that would support their position. Therefore, Plaintiff is entitled to summary judgment.

Respectfully submitted,

**UNITED STATES DEPARTMENT OF LABOR**

Jonathan Snare
Acting Solicitor of Labor

Samantha N. Thomas
Regional Solicitor

Adam Welsh
Regional Wage and Hour Counsel

*/s/ Alexander E. Gosfield*
Alexander E. Gosfield
Senior Trial Attorney
PA State Bar # 209537

*Attorneys for LORI CHAVEZ-DEREMER*
*Secretary of Labor, Plaintiff*

Mailing Address:

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103-2968
(215) 861-5124 (voice)
(215) 861-5162 (fax)
gosfield.alexander.e@dol.gov

Date: July 11, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 11, 2025, I electronically filed the foregoing Reply in Support of Motion for Summary Judgment and exhibits with the Clerk of Court by using the CM/ECF system, which will provide notice and an electronic link to this document to the attorneys of record in this case.

*/s/ Alexander E. Gosfield*
Alexander E. Gosfield
Senior Trial Attorney